IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | No. 5:12-CR-323-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| MARCUS A. GARZA, | § | |
| | § | |
| Defendant. | § | |

ORDER (1) DENYING MOTION TO WITHDRAW PLEA AGREEMENT;
(2) DENYING MOTION TO EXPAND SCOPE OF SENTENCING HEARING;
(3) GRANTING IN PART AND DENYING IN PART MOTION TO AMEND
JUDGMENT

Before the Court are three motions: (1) a Motion to Amend Judgment filed by the United States of America ("United States" or "Government") (Dkt. # 113); (2) a Motion to Withdraw Plea Agreement filed by Marcus A. Garza ("Garza" or "Defendant") (Dkt. # 114); and (3) a Motion to Expand the Scope of Sentencing (Dkt. # 115) filed by Defendant. On May 26, 2016, the Court heard oral argument on the motions: William R. Harris, Esq., appeared on behalf of the United States, and Michael W. McCrum, Esq., appeared on behalf of Defendant. The Defendant was present for the hearing and was given the opportunity to personally address the Court. After careful consideration of the memoranda filed in support and in opposition to the motions, and the arguments made at the hearing, the Court, for the reasons that follow, (1) **DENIES** Defendant's Motion to

1

Withdraw the Plea Agreement (Dkt. # 114); (2) **DENIES** Defendant's Motion to Expand the Scope of Sentencing (Dkt. # 115); and **GRANTS IN PART AND DENIES IN PART** the Government's Motion to Amend Judgment (Dkt. # 113).

BACKGROUND

On April 4, 2012, the United States filed a 35-count indictment against Garza alleging inter alia that he committed bank and income tax fraud. (Dkt. # 1.) On January 9, 2014, Garza, while represented by counsel, signed a plea agreement in which he pled guilty to Count 1 and Count 35, which charged him with bank fraud in violation of 18 U.S.C. § 1344 and willful failure to file an income tax return in violation of 26 U.S.C. § 7203, respectively. (Dkt. # 53.) On March 24, 2014, Garza, while represented by counsel, appeared before United States Magistrate Judge John W. Primomo; he was re-arraigned and pled guilty to Counts 1 and 35. (Dkt. # 64.) On March 25, 2014, United States District Court Judge Orlando L. Garcia accepted Defendant's guilty plea. (Dkt. # 67.) On April 20, 2015, this Court[1] heard allocution and sentenced Defendant to 30 months of imprisonment, three years supervised release, and $681,943.27 of restitution on Count 1, and 12 months imprisonment on Count 35, to run concurrently. (Dkts. ## 91, 92.) This Court's sentence reflected a downward variance of 16 months from the low end guideline range.

---

[1] On November 13, 2014, the case was re-assigned to the undersigned. (Dkt. # 75.)

Defendant appealed the sentence on the basis that "[t]he district court exceeded its statutory authority in its assessment of the amount to be ordered as restitution." ("Garza Appeal Brief," Dkt. # 115-1 at 7.) On December 28, 2015, the United States filed a Motion to Vacate Restitution Order and Remand for Assessment of Restitution with the United States Court of Appeals for the Fifth Circuit. (Dkt. # 118-1.) In its motion, the Government conceded that this Court's judgment of restitution in the amount of $681,943.27 was plain error under 18 U.S.C. § 3663A, because the judgment exceeded the loss caused by the specific conduct at the basis of the plea agreement for Count 1. (Id. at 2.) Defendant opposed this motion by arguing that the Fifth Circuit should not limit the scope of remand solely to the amount of restitution. (Dkt. # 118-2 at 2.) Specifically, Defendant argued that the Fifth Circuit should remand for reconsideration of all sentencing issues. (Id.) Nevertheless, on February 17, 2016, the Fifth Circuit granted the Government's Motion to Vacate and issued a mandate that specifically "ordered . . . remand . . . for assessment of restitution." ("Mandate," Dkt. # 112.)

On April 12, 2016, the United States filed its Motion to Amend the Judgment of Restitution. (Dkt. # 113.) The Government asserts that the Court should enter judgment in the amount of $107,689.12, the loss sustained by Wells Fargo Home Mortgage Bank, N.A., the lender named in Count 1. (Id. at 2.) Defendant filed a Response opposing the Restitution amount and in that Response

3

included a Motion to Expand the Scope of Re-Sentencing.  (Dkt. # 115).  The Government filed a Response in opposition.  (Dkt. ## 118, 119.)  Finally, Defendant filed a Motion to Withdraw the Plea Agreement.  (Dkt. # 114.)  On May 3, 2016, the Government filed its Response in opposition to withdraw the plea agreement.  (Dkt. # 118.)  On May 24, 2016, Defendant filed a Reply to his Motion to Withdraw the Plea Agreement (Dkt. # 120) and a Reply to his Motion to Expand the Scope of Sentencing (Dkt. # 121).

## LEGAL STANDARD

Under the law-of-the-case doctrine, the district court on remand must abstain from reexamining an issue of fact or law that has already been decided on appeal.  United States v. Teel, 691 F.3d 578, 582 (5th Cir. 2012).  One aspect of the law-of-case doctrine is the mandate rule.  See id.  Pursuant to the mandate rule, "[a] district court on remand 'must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court.'"  Id. (quoting United States v. McCrimmon, 443 F.3d 454, 459 (5th Cir. 2006)).

Accordingly, the mandate rule "prohibits a district court on remand from reexamining an issue of law or fact previously decided on appeal and not resubmitted to the trial court on remand.  This prohibition covers issues decided both expressly and by necessary implication."  United States v. Pineiro, 470 F.3d

4

200, 205 (5th Cir. 2006). "Additionally, pursuant to the 'waiver approach' to the mandate rule," McCrimmon, 443 F.3d at 459, "'[a]ll other issues not arising out of [the appeals court's] ruling and not raised before the appeals court, which could have been brought in the original appeal, are not proper for reconsideration by the district court below,'" Pineiro, 470 F.3d at 205 (citation omitted). Indeed,

> Absent exceptional circumstances, the mandate rule compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court. Moreover, the rule bars litigation of issues decided by the district court but foregone on appeal or otherwise waived, for example because they were not raised in the district court.

United States v. Lee, 358 F.3d 315, 321 (5th Cir. 2004)

However, the mandate rule is a discretionary device, not a jurisdictional rule that precludes reconsideration of issues outright. Teel, 691 F.3d at 583. The Fifth Circuit recognizes three exceptions to the mandate rule: (1) introduction of evidence at a subsequent trial that is substantially different; (2) an intervening change in controlling authority; and (3) a determination that the earlier decision was clearly erroneous and would work a manifest injustice. Pineiro, 470 F.3d at 205−06.

I.   Whether to Expand the Scope of Re-Sentencing

Defendant argues that the Court should expand the scope of sentencing to completely re-sentence him. Defendant asserts that: (1) the Government failed to meet its burden of proof that $107,689.12 is the appropriate

5

Restitution amount for the mortgage loan Garza fraudulently procured from Wells Fargo Bank, N.A. in Count 1; (2) amendments to the Sentencing Guidelines subsequent to Garza's sentencing would possibly result in a lower offense level, and thus a lower sentencing guideline range; and (3) at sentencing, this Court failed to provide Defendant's counsel a meaningful opportunity to present evidence that would have allegedly mitigated the restitution loss and the financial losses on relevant conduct that contributed to Defendant's enhanced offense level.

Recently, the Fifth Circuit re-affirmed its mandate rule by stating:

> Under our rule,
>
> [t]he only issues on remand properly before the district court are those issues arising out of the correction of the sentence ordered by this court. In short, the resentencing court can consider whatever this court directs−no more, no less. All other issues not arising out of this court's ruling and not raised before the appeals court, which could have been brought in the original appeal, are not proper for reconsideration by the district court below.

United States v. Bagley, No. 14-11331 (5th Cir. Feb. 1, 2016) (per curiam) (quoting United States v. Marmolejo, 139 F.3d 528, 531 (5th Cir. 1998). The Fifth Circuit in Bagley expressly reversed a district court for considering more sentencing issues on remand where remand, like here, was limited to modification of restitution. Bagley, No. 14-11331 at 1. Thus, the Fifth Circuit's mandate on remand is limited in scope to "assessment of restitution" and nothing more. For

this reason alone, the Court will not expand the scope of sentencing beyond the assessment of restitution for Count 1.

Further, Garza argued before the Fifth Circuit that he disagreed "that the scope of remand be limited solely to the issue of restitution. Compelling reasons warrant remand for reconsideration of all sentencing issues." ("Garza Resp. to Mot. to Vacate Restitution," Dkt. # 118-2 at 2.) Garza expressly moved to expand the scope of sentencing on remand before the Fifth Circuit; the Fifth Circuit expressly limited its mandate to the assessment of restitution, the mandate rule precludes this Court from expanding the scope of sentencing on remand. Pineiro, 470 F.3d at 205; Marmolejo, 139 F.3d at 530 ("[O]nly those discrete, particular issues identified by the appeals court for remand are properly before the resentencing court.").

Finally, Garza argues that the Court should exercise its discretion and ignore the mandate rule because (1) a change in the Sentencing Guidelines after his sentencing constitutes a change in controlling law; and (2) this Court denied his attorney a meaningful opportunity to present evidence at sentencing that allegedly rebuts the $681,943.27 in losses for relevant conduct, working a manifest injustice because the relevant conduct resulted in a 14-point offense level enhancement;

Garza's argument is without merit. Garza made these arguments to the Fifth Circuit in his response to the Government's Motion to Vacate Restitution

and Remand; the Fifth Circuit implicitly rejected his arguments by explicitly limiting remand to "assessment of restitution." (Mandate.) This Court cannot overrule the Fifth Circuit's implicit rejection of his arguments. Further, Garza knowingly and voluntarily waived his right to appeal his <u>sentence</u> by signing a plea agreement and pleading guilty before Magistrate Judge Primomo.

Accordingly, the Court denies Defendant's Motion to Expand the Scope of Sentencing.

II.  <u>Motion to Withdraw the Plea Agreement</u>

A. <u>Whether the Court has Jurisdiction to Consider the Motion</u>

The United States and Defendant dispute whether the Court has jurisdiction to consider Defendant's Motion to Withdraw the Plea Agreement on remand. The question here is whether the Fifth Circuit's decision to vacate the amount of Restitution and remand for "assessment of restitution" sets aside the finality of the sentence; if the Fifth Circuit's decision has this effect then Defendant could withdraw his plea agreement upon a showing of fair and just cause; if the Fifth Circuit's decision does not have this effect, the finality of the sentence remains intact and limits Defendant's ability to challenge his plea agreement to collateral attacks.

"After the court imposes [a] sentence, the defendant may not withdraw a plea of guilty . . . and the plea may be set aside only on direct appeal or

collateral attack." Fed. R. Crim. P. 11(e); <u>United States v. Vasquez</u>, 121 F. App'x 17, 18 (5th Cir. 2004) (holding that a post-sentencing motion to withdraw his guilty plea was unauthorized and without jurisdictional basis); <u>United States v. Davis</u>, 410 F.3d 1122, 1125 (9th Cir. 2005) (after a defendant is sentenced, a "plea may be set aside only on direct appeal or collateral attack").

The Fifth Circuit's remand order is three sentences in length and its mandate is clear: the appeals court granted the Government's motion to vacate restitution and ordered the case remanded "for assessment of restitution." (Mandate.) Thus, the Fifth Circuit vacated the <u>assessment</u> of restitution, but left undisturbed the <u>judgment</u> of restitution. Accordingly, the remand order did not revoke the finality of the restitution judgment. Further, the Fifth Circuit's Mandate left untouched the sentence of imprisonment, supervised release, and special assessment; these aspects of the judgment unequivocally remain final. Reading the Fifth Circuit's Mandate in conjunction with the mandate rule, this Court is convinced that it may consider only what the Fifth Circuit has directed−"no more, no less." <u>Pineiro</u>, 470 F.3d at 205. The Fifth Circuit's Mandate directs remand only "for the assessment of restitution" and nothing more; accordingly, the mandate rule, the Mandate itself, and Federal Rule of Criminal Procedure 11(e) requires this Court to find that the sentence remains final and that it may only assess a new amount of restitution on remand. Additionally, a consideration of the

merits of Garza's Motion to Withdrawal the Plea Agreement amounts to an end-run-around of the Fifth Circuit's Mandate and the mandate rule itself. By getting to the merits and withdrawing the plea agreement would potentially allow Defendant to receive sentencing anew, and that is exactly what the mandate rule prohibits.

   The instant case is distinguishable from the most persuasive opinion cited by Garza in support of his argument that a district court may entertain a motion to withdraw a plea agreement on remand. In United States v. Barnett, the district court considered a motion to withdraw the defendant's plea agreement on remand after the Eighth Circuit "reversed and remanded for resentencing." 426 F. Supp. 2d 898, 902 (N.D. Iowa 2006). The district court determined that it could consider the defendant's motion to withdraw the plea agreement because the Eighth Circuit's order "did not contain any foreclosing or limiting directive that would relate to [the defendant's] new motion to withdraw his guilty plea." Id. at 905. Unlike Barnett where the Eighth Circuit reversed and remanded for all resentencing, here, the Fifth Circuit did not reverse and remand for all resentencing, but instead limited its remand to "assessment of restitution." Further, this Court rejects Barnett's reasoning that a district court can consider a motion to withdraw a plea agreement on remand on the basis that the appellate court failed to expressly foreclose that option. Not only does this reasoning misconstrue the

mandate rule in the Fifth Circuit, it would also require a circuit court to predict a defendant's litigation strategy on remand and expressly prohibit or permit an infinite quantity of legal maneuvers in its remand order.  That is not practicable.

Accordingly, the Court finds that it lacks jurisdiction on remand to consider the merits of Defendant's Motion to Withdraw the Plea Agreement.

B.  The Merits of the Motion to Withdraw Plea Agreement

In the alternative, even if this Court had jurisdiction to consider the instant motion, the motion would be denied.  In evaluating the denial of a motion to withdraw a guilty plea, the district court considers seven relevant factors: (1) whether the defendant asserted his innocence; (2) whether withdrawal would prejudice the Government; (3) whether the defendant delayed in filing the motion; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available at the time the original plea was entered; (6) whether the plea was knowing and voluntary; and (7) whether withdrawal would waste judicial resources. United States v. Carr, 740 F.2d 339, 343-44 (5th Cir. 1984).

While Defendant now maintains his innocence and alleges that he has always maintained his innocence ("Garza Aff.," Dkt. # 120-1), Defendant freely admitted his guilt in his Rule 11 hearing before Magistrate Judge Primomo.  ("Rule 11 Tr.," Dkt. # 110 at 8:2−8:16.)  In an attempt to demonstrate his innocence as to

Count 1 of the Indictment for bank fraud, Garza submitted an affidavit from a Wells Fargo loan officer.  ("Wells Fargo Aff.," Dkt. # 120-2.)  However, the Wells Fargo affidavit offers some proof that Garza caused the false tax returns to be submitted to the bank through his tax preparer which is evidence of his guilt, rather than his innocence.  (Id.)  Withdrawal of the plea agreement would also prejudice the Government because a certain key witness has health issues and may not be available to testify.  (Dkt. # 118.)  Third, Defendant has substantially delayed filing the instant motion to withdraw his plea agreement.  Nearly a year and a half passed between the time Defendant signed his plea agreement and his original sentencing; now it's more than two years have passed since his guilty plea.  Such an eleventh hour attempt to withdraw the plea agreement weighs heavily against withdrawing a plea.  See United States v. Rodriguez, 306 F. App'x 135, 138 (5th Cir. 2009) ("This court carefully scrutinizes 'eleventh hour' assertions of innocence."); United States v. Lampazianie, 251 F.3d 519, 524−25 (5th Cir. 2001) ("The district court was entitled both to discount Francesco's belated assertions of innocence and to weigh the seven-month delay in denying Francesco's motion [to withdraw guilty plea].").

    Further, Defendant had close assistance of counsel at the time he signed the plea agreement and during the Rule 11 hearing.  Garza now argues that his attorney was ineffective and unprepared for trial, and as a result, his counsel

12

persuaded him to sign the agreement.[2]  However, the record indicates that Garza's counsel was effective, and Garza fully acknowledged that he received effective assistance of counsel during his Rule 11 hearing.  (Dkt. # 110 at 6:10−6:16.)  Indeed, at the Rule 11 hearing, Garza and his counsel were successful at striking a term from the plea agreement that would have waived his ability to challenge his conviction on direct and collateral appeal.  (Id. at 32:2−32:21.)

        Finally, Garza argues that he entered into the plea agreement without being fully informed regarding the consequences of the plea.  Specifically, he argues that the Government and his counsel represented to him during plea negotiations that the Court would only sentence him for conduct he admitted to in the plea agreement, and not for relevant conduct in the dismissed indictment counts.  However, the plea agreement expressly indicates that the Court would sentence Garza in accordance with the United States Sentencing Guidelines, which expressly permit the Court to consider relevant conduct in determining a sentence.  USSG § 1B1.3; ("Plea Agreement," Dkt. # 53 at 5.)  Specifically, the Plea Agreement states:

> Regarding the imposition of sentence, the Defendant understands that the Court decides the punishment that will be imposed.  The Court

---

[2] Defendant's counsel averred at the hearing that he possessed emails between his client and his client's counsel at the time of the plea agreement.  Defendant asserted that the emails contained proof of ineffective assistance of counsel and that he would file the emails onto the record.  However, Defendant's counsel never filed the emails and the Court has no way of ascertaining the email contents.

>shall determine the sentence to be imposed in accordance with Title 18, United States Code, 3553(a), after considering the application of the Sentencing Guidelines.  The Guidelines are advisory and not binding, although the Court is required to consider them.  **Any prediction or estimate of the probable sentencing range or ultimate sentence that may be imposed, whether from the government, his attorney, or the Probation Office, is not a promise, is not binding, and is not an inducement for the Defendant's guilty plea or waivers.  The Defendant will not be permitted to withdraw his guilty plea because the sentence imposed differs from the sentence he expected or hoped for.**

(Plea Agreement at 5 (emphasis in original).)  Further, Garza stated at his Rule 11 hearing that he was entering into the agreement voluntarily, and fully knowledgeable of its consequences.  Accordingly, even if the Court had jurisdiction to consider the motion−which it does not have−it would deny Garza's Motion to Withdraw the Plea Agreement.

III.   Amending the Judgment on Mandate

The Government has moved, based on the Fifth Circuit's mandate, to amend the judgment of restitution from $681,943.27 to $107,689.12.  (Dkt. # 113.) The Government asserts that the victim in Count 1 is Wells Fargo Home Mortgage and Wells Fargo Bank, N.A (collectively "Wells Fargo"), because Garza obtained a mortgage from Wells Fargo in part by using a false tax return.  Thus, Restitution in this case is meant to compensate any loss that Wells Fargo suffered.

Federal law "does not permit restitution awards to exceed a victim's loss."  United States v. Beydoun, 469 F.3d 102, 107 (5th Cir. 2006).  The

government has the burden of proving a victim's actual losses. United States v. De Leon, 728 F.3d 500, 506 (5th Cir. 2013). The trial court must resolve any disputes as to the amount of restitution based on a preponderance of the evidence.

At the hearing, the United States averred that Wells Fargo assigned the relevant mortgage to U.S. Bank, N.A. for the face value of the note, who then transferred the mortgage for $0 to Gold Line Investments, who subsequently sold the note for $234,000. In light of this averment, the Court finds that the Government has failed to meet its burden of showing the amount of restitution for which Defendant should be liable because it does not appear that Wells Fargo suffered a loss. Further, pursuant to Sentencing Guideline § 5E1.1(b)(2), the Court finds that determining complex issues of fact surrounding the assignment, transfer, and sale of the relevant mortgage would prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process. Accordingly, the Court assesses restitution in the amount of $0 for Count 1.

As a final matter, the Court will quickly address the issue of restitution versus loss. Even though the issue of "loss" for relevant conduct is not before the Court, Garza spent a substantial portion of his briefing in an attempt to convince the Court that it should re-open its calculation of "loss" for guideline purposes. In doing so, Garza conflated the legal issues of restitution and "loss" for

relevant conduct.  As explained above, the mandate rule precludes this Court from considering sentencing issues other than assessment for restitution, so it will not expand the scope to consider "loss" as to relevant conduct.  Nevertheless, the Court's assessment of $0 of Restitution on Count 1 has no effect on the Court's finding of "loss" in the amount of $681,943.27 for purposes of relevant conduct for sentencing and guideline calculation.  Cf. United States v. Benns, 740 F.3d 370, 377 (5th Cir. 2014) (showing generally that restitution and "loss" for relevant conduct are two separate legal considerations).  An assessment of $0 for Restitution for Count 1 is not sufficient to show that the actual or intended losses for conduct in Count 1 cannot be considered in the calculation of total losses for relevant conduct.  See United States v. Wright, 496 F.3d 371, 381 (5th Cir. 2007) ("The standard for 'relevant conduct' under the Guidelines is more lax than that for determining what conduct can be the basis of restitution, hence the two arguments are distinct.").

    While Defendant takes much umbrage with the Court's calculation of "loss" for relevant conduct at his original sentencing, the Court considered the differences between restitution and losses applicable to relevant conduct by stating: "the Court has carefully looked over what you have submitted to the Court, and the evidence with respect to the entire transactions [those applicable to restitution and

to "loss" for relevant conduct] are the same." ("Sentencing Tr.," Dkt. # 99 at 31:1−3.)

Nonetheless, Garza has expressly waived his right to appeal his sentence on any ground, except in a case in which the sentence imposed by the Court is greater than the maximum sentence authorized by statute. Now that the Court has amended its assessment of restitution, no part of the sentence is greater than the maximum authorized; Garza has no procedure for a direct appeal.

## CONCLUSION

For the aforementioned reasons, the Court: (1) **DENIES** Defendant's Motion to Withdraw his Plea Agreement (Dkt. # 114); (2) **DENIES** Defendant's Motion to Expand the Scope of Sentencing (Dkt. # 115); and (3) **GRANTS IN PART AND DENIES IN PART** the Government's Motion to Amend the Judgment (Dkt. # 113). The Court **ORDERS** the Clerk to **AMEND THE JUDGMENT** (Dkt. # 92) to reflect restitution in the amount of $0.

**IT IS SO ORDERED.**

**DATE:** San Antonio, Texas, May 31, 2016.

_____
DAVID ALAN EZRA
UNITED STATES DISTRICT JUDGE